UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                          **MEMORANDUM**
                                                            **OPINION AND ORDER**
ROHARIL CRUZ,
MAX JOSE LAMARCHE,                                          21-CR-00502 (PMH)

                          Defendants.
--------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

Roharil Cruz ("Cruz") and Max Jose Lamarche ("Lamarche" and together with Cruz, "Defendants") each stand charged in a one-count indictment of conspiracy to distribute narcotics in violation of 21 U.S.C. § 846. (Doc. 9). Pending presently before the Court are: (1) Defendants' joint motion to dismiss the indictment under Federal Rule of Criminal Procedure 12 (Doc. 66); (2) Lamarche's motion to suppress physical evidence and statements under Federal Rule of Criminal Procedure 12(b)(3) (Doc. 68); and (3) Lamarche's motion to sever his case under Federal Rule of Criminal Procedure 14 (*id*.). The Court held a status conference on November 9, 2022 and heard argument from the parties on the extant motions. (*See* Nov. 9, 2022 Min. Entry).

Based upon the parties' written submissions, oral argument, and for the reasons set forth below, Defendants' motions are DENIED.

## BACKGROUND

The facts recited herein are undisputed or, where disputed, are taken most favorably to Defendants.[1]

On or about June 3, 2021, a confidential informant ("CI") informed the FBI that Cruz could supply the CI with fentanyl pills. (Doc. 71-2 ¶ 5; Doc. 71-3 ¶ 5). At approximately 8:30 p.m., the CI made multiple recorded calls to Cruz to arrange to purchase approximately 5,000 fentanyl pills for $7.50 per pill. (Doc. 71-2 ¶ 6; Doc. 71-3 ¶ 6). The CI told Cruz, during a call at approximately 10:10 p.m., to meet them in the vicinity of the Yonkers Casino in Yonkers, New York, around midnight. (Doc. 71-2 ¶ 6; Doc. 71-3 ¶ 6).

The CI took law enforcement officers to a residence in the Bronx in the vicinity of 175th Street and Southern Boulevard where, based on prior interactions, the CI knew that Cruz lived. (Doc. 71-3 ¶ 7). At approximately 11:00 p.m., law enforcement observed a 2019 black Audi SQ5 with New York registration (the "Audi") park on the corner of 175th Street and Southern Boulevard. (*Id.*; Doc. 71-4). One of the two occupants in the Audi, the passenger, was identified by law enforcement as Cruz. (Doc. 71-3 ¶ 7; Doc. 71-4). The other occupant, the driver, was

---

[1] "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Cantoni*, No. 19-4358-CR, 2022 WL 211211, at *3 (2d Cir. Jan. 25, 2022) (quoting *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (alteration in original)). Here, however, an evidentiary hearing is unnecessary because of the absence of any "contested issues of fact that must be resolved in order for this Court to rule on [the] motion to suppress." *United States v. Holt*, No. 21-CR-00080, 2021 WL 5281366, at *2 (D. Conn. Nov. 12, 2021); *see also United States v. Merced*, No. 19-CR-00832, 2021 WL 5647827, at *11 (S.D.N.Y. Nov. 30, 2021). As indicated, the Court credits Lamarche's assertions made in his declaration accompanying the motion; but the only facts arguably contested by Lamarche's declaration concern the visibility of the contents of the brown paper bag seized from the Audi. As noted *infra*, the Court need not resolve that question to fully adjudicate the instant motions. *See, e.g., United States v. Caming*, 968 F.2d 232, 236 (2d Cir. 1992) (holding that the district court was not required to hold an evidentiary hearing before denying a motion to suppress where the defendant's affidavit did not create a dispute over any material facts and where the factual issues the defense contended necessitated a hearing were irrelevant to the inquiry before the court), *abrogated on other grounds by Peck v. United States*, 73 F.3d 1220 (2d Cir. 1995).

"later identified" as Lamarche. (Doc. 71-4). Law enforcement observed Defendants enter the building and, about ten minutes later, exit the building together. (*Id*.; Doc. 71-3 ¶ 7). Lamarche returned to the Audi and drove away, while Cruz walked away. (Doc. 71-4; Doc. 71-3 ¶ 7).

The CI had another call with Cruz around midnight, during which they ultimately agreed that they would meet at the CVS parking lot in Yonkers, New York to conduct the transaction. (Doc. 71-2 ¶ 6; 71-3 ¶ 6). The CI waited for Cruz in the CVS parking lot and shortly after midnight, the Audi pulled into the parking lot. (Doc. 71-5; Doc. 71-2 ¶ 7(a); 71-3 ¶ 8(a); *see also* Doc. 70, "Lamarche Decl." ¶ 3 ("Not long after 12:00 a.m. on June 4, 2021, I drove my black Audi into a CVS store parking lot in Yonkers, New York.").

Law enforcement arrested Lamarche and conducted a search of the Audi. (Lamarche Decl. ¶¶ 5-8; Doc. 71-5). A brown bag containing approximately 5,000 pills was seized from the Audi and the pills were field tested. (Doc. 71-2 ¶ 7(b); 71-3 ¶ 8(b)). The first field test was inconclusive, but the subsequent field test was positive for the presence of fentanyl. (Doc. 71-2 ¶ 7(b); 71-3 ¶ 8(b)). Lamarche was taken to the Yonkers Police Department where he waived his *Miranda* rights and advised law enforcement that he was told by another individual to deliver the pills from a location in the Bronx, New York, to an address in Yonkers, New York. (Doc. 71-2 ¶ 8; 71-3 ¶ 9; Doc. 71-5).

The Government produced in its Rule 16 discovery, *inter alia*, a laboratory report from the Yonkers Police Department's forensic laboratory indicating that a sample of the pills "contains para-/ortho-/meta-Fluorofentanyl." (Doc. 67-2). The report does not specifically indicate which of the three analogues (para-fluorofentanyl, ortho-fluorofentanyl, or meta-fluorofentanyl) were present in the evidence. The report notes explain that the isomer could not be determined by the Yonkers Police Department's forensic laboratory: "I explained that the

drug found had positional isomers (all of which are not controlled) and that the YPDFSL could not determine which isomer the compound was . . . . the laboratory could not determine the isomer for the compound . . . the laboratory follows the NY State Public Health Law list of controlled substances." (*Id*. at 65-67).

## ANALYSIS

I.   <u>Joint Motion to Dismiss Indictment</u>

Defendants jointly move under Federal Rule of Criminal Procedure 12 to dismiss the indictment. "Before trial, a defendant 'may raise by . . . motion any defense, objection, or request that the court can determine without a trial on the merits,' including a motion alleging 'a defect in the indictment.'" *United States v. Aiyer*, 33 F.4th 97, 116 (2d Cir. 2022) (quoting Fed. R. Crim. P. 12(b)(1)(B)). Defendants move to dismiss the indictment on the grounds that it violates the Fifth and Sixth Amendments and the rules of fundamental fairness.

"An indictment returned by a legally constituted and unbiased jury . . . if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). To be valid on its face, "[a]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021) (alteration omitted). The form is governed by Federal Rule of Criminal Procedure 7(c)(1), which requires that an indictment be a plain, concise and definite written statement of the essential facts constituting the offense charged. "An indictment is sufficient as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the

same offense." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021) (internal quotation marks omitted).

District courts considering Rule 12 motions can "make factual determinations in matters that do not implicate the general issue of a defendant's guilt," but "cannot resolve 'a factual dispute that is inextricably intertwined with a defendant's potential culpability,' as that is a role reserved for the jury." *Aiyer*, 33 F.4th at 116 (quoting *United States v. Sampson*, 898 F.3d 270, 281 (2d Cir. 2018)); *see also United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) (inquiry on pretrial motion to dismiss should not go beyond the face of the indictment and into the sufficiency of the evidence that would be introduced by the government at trial); *United States v. Griffith*, 515 F. Supp. 3d 106, 113 (S.D.N.Y. 2021) ("A pretrial motion to dismiss an indictment must not weigh the sufficiency of the evidence.").

Defendants' argument that the indictment fails to state facts specific enough to describe a particular criminal act and the Government therefore proceeds on an "either-or" theory of prosecution falls flat. The indictment in this case pleads the elements of the statute charged (21 U.S.C. § 846); the controlled substance involved in the charged conspiracy ("para-/ortho-/meta-fluorofentanyl, an analogue of fentanyl"); the quantity involved (100 grams and more); the relevant time period ("[f]rom on or about June 3, 2021, to on or about June 4, 2021"); and the approximate location (in the Southern District of New York and elsewhere). (Doc. 67-1). The indictment is valid on its face. *See Wedd*, 993 F.3d at 120; *see also United States v. Ulbricht*, No. 14-CR-00068, 2014 WL 5410049, at *4 (S.D.N.Y. Oct. 24, 2014) ("An indictment is not defective simply because it charges a defendant with alternative offenses."); *United States v. Logan*, 845 F. Supp. 2d 499, 515 (E.D.N.Y. 2012) ("An indictment under § 846 'need only

allege the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated.'" (quoting *United States v. Macklin*, 927 F.2d 1272, 1276 (2d Cir. 1991)).

Moreover, and contrary to Defendants' assertion, the indictment indeed cites "other relevant provisions of the United States Code," namely 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)—the specific offense for which Defendants are charged: conspiracy to distribute 100 grams or more of a mixture or substance containing a detectable amount of any analogue of fentanyl. 21 U.S.C. § 841(b)(1)(A)(vi).

Defendants argue that only two of the three fentanyl analogues charged in the indictment are "scheduled fentanyl analogues," meta-fluorofentanyl is not a "controlled substance analogue," and therefore, they cannot be charged with conspiracy to distribute such an analogue.[2] A substance can be a fentanyl analogue under 21 U.S.C. § 841(b)(1)(A)(vi) even if it is not a "controlled substance analogue" under 21 U.S.C. § 802(32). *United Sates v. McCray*, 7 F.4th 40, 45-46 (2d Cir. 2021). "Neither § 841 nor the definitional statute—21 U.S.C. § 802—defines the term 'analogue' or the phrase 'any analogue of [fentanyl].'" *Id.* at 45. When a term is not defined in a statute, it is given its ordinary meaning. *Id.* at 45-46; *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1140 (2018). The Second Circuit, employing the plain and ordinary meaning of the word, has explained that "analogue" is defined as "a chemical compound structurally similar to another but differing often by a single element of the same valence and group of the periodic table as the element it replaces." *Id.* at 46 (quoting Webster's New Collegiate Dictionary (9th ed. 1985)). The question of whether a particular substance is structurally similar to another substance is a proper subject for the jury. *United States v. Lawton*, 759 F. App'x 66, 67 (2d Cir. 2019) ("[J]uries may decide the question of "substantial similarity"

---

[2] The laboratory report identifies the substance as para-, ortho-, or meta-fluorofentanyl but does not determine the positional isomer because the laboratory follows New York State Public Health Laws, and only para- and ortho-fluorofentanyl are controlled under State law. *See* N.Y. Pub. Health Law §§ 3306.

without running afoul of vagueness concerns."); *United States v. Demott*, 906 F.3d 231, 239 (2d Cir. 2018) (holding that whether a particular substance is substantially similar to a controlled substance is a factual question for the jury).

Whether the Government's evidence sufficiently establishes that meta-fluorofentanyl is an analogue of fentanyl under § 841 is not the proper subject of a pretrial motion to dismiss. *See Aiyer*, 33 F.4th at 116. Accordingly, Defendants' joint motion to dismiss the indictment is denied.[3]

II.    Motions to Suppress

Lamarche moves to suppress the physical evidence seized from his Audi, arguing that law enforcement did not have probable cause to arrest him or to search his vehicle. He further argues that his post-arrest, *Mirandized* statements to law enforcement should be suppressed as the tainted fruit of the foregoing Fourth Amendment violations.

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. amend. IV. As that "text makes clear, the concept of reasonableness is the touchstone of constitutionality of a governmental search. What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and

---

[3] Defendants requested, in the event their motion was denied, that the Court preclude the Government from using any expert disclosures that have not yet been disclosed. Preclusion is unwarranted under Federal Rule of Criminal Procedure 16. Until December 1, 2022 (and at the time Defendants filed this motion), the rule did not provide for the specific timing of expert witness disclosures, though it was expected that such disclosures occur in a "timely fashion." *United States v. Freeman*, No. 18-CR-00217, 2019 WL 2590747, at *3 (S.D.N.Y. June 25, 2019). The rule now provides that "[t]he court, by order or local rule, must set a time for the government to make its disclosures. The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii). The timeline proposed by the Government, that it would "produce expert disclosure materials in accordance with the Court's trial schedule . . . and at least 30 days before trial" (Doc. 72 at 12), is reasonable. *See, e.g. Freeman*, 2019 WL 2590747, at *3 (four weeks before trial); *United States v. Ojeikere*, No. 03-CR-00581, 2005 WL 425492, at *8 (S.D.N.Y. Feb. 18, 2005) (one month before trial); *United States v. Lino*, No. 00-CR-00632, 2001 WL 8356, at *21 (S.D.N.Y. Jan. 2, 2001) (30 days before trial). This branch of Defendants' motion is therefore denied without prejudice.

the nature of the search or seizure itself." *MacWade v. Kelly*, 460 F.3d 260, 267-68 (2d Cir. 2006) (internal citations and quotation marks omitted). "A court's 'assessment as to whether probable cause existed at the time of the arrest is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone.'" *Daniels v. City of New York*, No. 15-CV-2251, 2016 WL 4368378, at *5 (S.D.N.Y. Aug. 14, 2016) (quoting *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 127 (2d Cir. 2009)); *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.").

"Warrantless searches and seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (internal quotation marks omitted). One such exception is the automobile exception. Under the automobile exception, law enforcement "may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). "Where the probable cause upon which the search is based extends to the entire vehicle, the permissible scope of a search pursuant to this exception includes every part of the vehicle and its contents including all containers and packages that may conceal the object of the search." *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quotation marks and alteration omitted).

Lamarche does not dispute that: (1) on June 3, 2021, at approximately 8:30 p.m., the CI made multiple audio recorded calls to Cruz to arrange to purchase approximately 5,000 fentanyl pills at around midnight; (2) at approximately 11:00 p.m., law enforcement observed the Audi in the vicinity of Cruz's residence in the Bronx, New York; (3) law enforcement observed Defendants together exiting the Audi and entering the building; (4) law enforcement observed Defendants, ten minutes later, exit the building together and Lamarche return to the Audi and drive away; (5) at approximately 11:41 p.m., Cruz told the CI he wold send "Max" and the CI should give money to "Max";[4] (6) the CI and Cruz ultimately agreed to meet at the CVS parking lot in Yonkers, New York; and (7) Lamarche arrived alone in the Audi to the CVS parking lot in Yonkers, New York, not long after 12:00 a.m. on June 4, 2021.

Based on the totality of these undisputed facts, law enforcement had probable cause to arrest Lamarche when he arrived in the Audi in the CVS parking lot. The events leading up to the arrest, viewed from the standpoint of an objectively reasonable police officer, amounts to probable cause. *United States v. Vasquez*, 297 F. Supp. 2d 696, 698 (S.D.N.Y. 2004).

For the same reasons, there existed probable cause to search the Audi and the brown paper bag therein. Lamarche argues that because there was no prior information that Lamarche specifically would be conducting the drug transaction or that the Audi was being used to transport illegal drugs, law enforcement lacked probable cause to search the Audi and the brown paper bag therein. The Court disagrees. Law enforcement had probable cause to believe the Audi contained the pills the CI was expecting based on his arrangement with Cruz, predicated upon

---

[4] Lamarche takes issue with the description of this recorded call in the Government's brief, in particular noting that, at the time of this call between the CI and Cruz, law enforcement did not know who "Max" was, nor did the CI and Cruz use the words "fentanyl" or "drugs" during the call. (Doc. 78 at 5). Whether law enforcement knew to expect Lamarche, specifically, in the parking lot (as opposed to any other individual who was not Cruz) does not aid the Court's assessment of probable cause, when considering the facts known to law enforcement in their totality.

the content of the recorded calls, what law enforcement observed during the surveillance of Defendants, and upon the Audi's arrival in the CVS parking lot. Law enforcement further had probable cause to believe that the brown paper bag "on the floor in front of the passenger seat under the glove compartment dashboard area" (Lamarche Decl. ¶ 4)—an obvious location to search—contained those pills. *California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").

Accordingly, under these circumstances, probable cause existed for law enforcement to arrest Lamarche and search the Audi.[5] Lamarche's motion to suppress the physical evidence seized from the Audi at the time of his arrest is, therefore, denied.

The Court's determination as to the existence of probable cause is dispositive of Lamarche's associated argument that his post-arrest, *Mirandized* statements should be suppressed. He contends that the exclusionary rule applies to his post-arrest statements as the fruits of an illegal arrest. *Murray v. United States*, 487 U.S. 533, 536-37 (1988) ("The exclusionary rule . . . prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search . . . ."). Because, however, the pills were discovered through a lawful search and arrest, the exclusionary rule has no application to these facts. *United States v. Daniels*, No. 21-CR-0081, 2021 WL 4690837, at *11 (E.D.N.Y. Oct. 7, 2021) (declining to suppress post-arrest statements as "fruits from the poisonous tree" where the contraband at issue were discovered through a lawful pat down of the defendant based on the existence of probable cause to arrest him). Lamarche does not dispute that he was provided

---

[5] Because the Court finds that the automobile exception applies, it need not and does not conduct a separate analysis under the plain view exception, a separate and independent basis proffered by the Government.

*Miranda* warnings after his arrest and signed a *Miranda* waiver form. He knowingly and voluntarily made statements to law enforcement, including that he was told by another individual to deliver the pills from a location in the Bronx, New York, to an address in Yonkers, New York. Accordingly, the suppression of Lamarche's post-arrest statements is not warranted under the fruit of the poisionous tree doctrine.

III.   <u>Motion to Sever</u>

Lamarche asks the Court to sever his case from that of his co-defendant Cruz on the ground that he will suffer substantial prejudice from a joint trial. He argues that "[s]everance is warranted for Mr. Lamarche because the drastically greater amount of evidence against Cruz will result in substantial prejudice against Mr. Lamarche and will prevent the jury from making a reliable judgment about Mr. Lamarche's innocence or guilt." (Doc. 71 at 13-14).

"If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). A defendant who "seeks separate trials carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994). "With conspiracy charges, '[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder.'" *United States v. Lemay*, No. 21-CR-00573, 2022 WL 17363595, at *2 (S.D.N.Y. Dec. 1, 2022) (quoting *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988)). It is beyond cavil that "[w]here a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998).

Even if, as Lamarche argues, there is a greater amount of evidence against Cruz, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Moreover, "even the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *Id.* (internal quotation marks omitted). Where, as here, each defendant is alleged to be a member of a single conspiracy, "virtually all of the evidence admitted at a joint trial would be admissible against each separate defendant in a separate trial as acts of his co-conspirators in furtherance of the charged conspiracy." *United States v. Jimenez*, 824 F. Supp. 351, 368 (S.D.N.Y. 1993). Because Federal Rule of Criminal Procedure 14 explicitly permits a district court to "provide any other relief that justice requires," the rule "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). Even in the rare circumstances where "the risk of prejudice is high," severance is not required, as "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*. at 539.

Lamarche has not shown that the fact there may be more evidence against Cruz than can be offered against Lamarche will result in substantial prejudice warranting a separate trial. The motion to sever is, accordingly, denied.

## CONCLUSION

For the foregoing reasons, Defendants' joint motion to dismiss the indictment is DENIED and Lamarche's omnibus motion to suppress evidence and statements and to sever is DENIED.

As noted during the November 9, 2022 conference, time has been excluded under the Speedy Trial Act through May 30, 2023.

The Court will separately docket a Pretrial Scheduling Order.

**SO ORDERED.**

Dated:  White Plains, New York
        December 12, 2022

_____
Philip M. Halpern
United States District Judge